UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES HENRY UTZMAN et al.,<br>　　　　　Appellants,<br><br>　　v.<br><br>SUNTRUST MORTGAGE, INC.,<br>　　　　　Appellee. | Case No. 15-cv-04299-RS<br><br>**ORDER ON APPEAL** |

## I. INTRODUCTION

This dispute stems from a loan that was issued to finance the construction of a home on a parcel of land commonly referred to as 169 Rose Avenue ("169 Rose"). Debtor-appellants Charles and Anna Utzman ("the Utzmans") sought to plant roots in Mill Valley, California, and got financing for their property in August 2007 from creditor-appellee Suntrust Mortgage, Inc. ("Suntrust"). Years later, the Utzmans filed a petition for bankruptcy protection under Chapter 11 of the Code, and tried to bifurcate Suntrust's claim into secured and unsecured components. Suntrust then invoked the "anti-modification exception" in section 1123(b)(5) of the Code, which bars a Chapter 11 plan from modifying "a claim secured only by a security interest in real property that is the debtor's principal residence."

This appeal centers on the sole question of whether the anti-modification exception applies to stonewall the Utzmans in their continuing effort to bifurcate Suntrust's secured claim. The Utzmans insist the exception is inapplicable because they rent out a portion of their property, meaning Suntrust's claim is not secured only by an "interest in real property that is" only "the debtor's principal residence." They further insist the deed of trust ("DOT") grants Suntrust an interest in personal property, therefore defeating the exception because the claim must be secured

1  "only by a security interest in *real* property" (emphasis added).

2  The bankruptcy court rejected the Utzmans' interpretation and barred them from modifying Suntrust's claim. There is a budding disagreement, however, both here and across the country, over the appropriate construction of the statute.

For the reasons explained below, the bankruptcy court's order denying the Utzmans' request for a decision determining Suntrust's secured claim will be reversed. Section 1123(b)(5) requires the real property to be used as the debtor's principal residence. Contrary to the Utzmans' preferred interpretation, it does not require the real property to be used *exclusively* as the debtor's residence. The Utzmans do not dispute 169 Rose Avenue serves as their principal residence. Accordingly, the fact that they rent out a small portion of the property does not defeat the applicability of the exception. That said, the statute *does* require a lender's claim to be secured "only by a security interest in real property." Under the Residential Construction Rider ("RCR") attached to the DOT, Suntrust's claim simply does not meet that definition.

## II. FACTUAL BACKGROUND

Around 2004, debtor-appellants Charles and Anna Utzman acquired two vacant lots in Mill Valley, California with the intention of building a home. Though the lots are contiguous, the Utzmans elected to construct their future residence on the parcel of real property known as "169 Rose Avenue." The shovels found dirt for the first time around 2005, and after two years of progress, the Utzmans went searching for a residential construction loan.

In stepped Suntrust, which loaned the Utzmans $1,365,000 in August 2007. The Utzmans executed a note, secured by the DOT, in order to obtain the loan, and 169 Rose eventually bloomed by way of the proceeds. The property itself includes both a home office and a residential unit to rent out to third parties.[1] Though 169 Rose became the Utzmans' principal residence, they did not obtain a Certificate of Occupancy.[2]

---

[1] Though Suntrust had the construction plans at the time it issued the loan, it is not clear the parties contemplated the separate unit would be used as an income-producing rental unit.

[2] The Utzmans now estimate it would cost $215,585 to complete construction to obtain the

The DOT gave Suntrust a secured interest in the property at 169 Rose, and the nature of that interest lies at the heart of the instant dispute. On December 18, 2014, several years after constructing the property, the Utzmans filed a petition for bankruptcy protection under Chapter 11 of the Code. They soon proposed to modify Suntrust's rights under Section 506 of the Code,[3] which permits the bifurcation of a secured claim—like Suntrust's—into two distinct components: the first, a *secured* component, for the present value of the collateral; the second, an *unsecured* component, for the difference between the collateral's present value and the amount of debt owed.

To implement their plan, the Utzmans moved for an order determining the value of Suntrust's claim. Suntrust opposed the motion on the ground the debtors were barred from proceeding with the modification. Suntrust invoked the "anti-modification exception" in Section 1123(b)(5) of the Code, which bars a Chapter 11 plan from modifying "a claim secured only by a security interest in real property that is the debtor's principal residence."

A hearing was held on the Utzmans' motion in July 2015, and the bankruptcy court ordered additional briefing on the anti-modification exception. Appellants then argued the DOT conveys an interest in a multi-unit dwelling and personal property, so the exception does not apply because Suntrust's claim is not secured "only by a security interest in real property" that serves only as "the debtor's principal residence." Appellants grounded their argument in the Residential Construction Rider attached to the DOT, which defines the "property" securing appellants' performance as including both "real" and "personal" property.

After an additional hearing, the bankruptcy court found the anti-modification exception *did* apply, and therefore denied the Utzmans' motion to bifurcate Suntrust's claim. Relying on the

---

certificate.

[3] Section 1123 of the Bankruptcy Code generally permits a debtor in a proceeding under Chapter 11 to propose a plan to modify the rights of any creditor under any claim. *See* 11 U.S.C. § 1123. A "claim" includes any "right to payment" on a debt owing to a creditor. *Id.* § 101(5)(A). A "creditor" includes any "entity" that has a pre-petition "claim against the debtor." *Id.* § 101(10). A claim is "secured" if the creditor has a "lien" on property as collateral, and is "unsecured" if it does not. *Id.* § 506(a)(1). A "lien" includes a "charge against or interest in property to secure payment of a debt or performance of an obligation." *Id.* § 101(37).

1   Ninth Circuit Bankruptcy Appellate Panel's ("BAP") decision in *In re Wages*, 508 B.R. 161 (9th

2   Cir. BAP 2014) ("*Wages*"), the court was not persuaded the rental unit took Suntrust's claim

3   outside the exception.  The court also found Suntrust's claim "is secured only by a security interest

4   in real property" given the parties contemplated the collateral would become part of the "real

5   property" when construction completed.[4]

6         The Utzmans filed a notice of appeal on September 15, 2015, and elected to proceed before

7   a district court pursuant to 28 U.S.C. 158(c)(1)(A).  Jurisdiction over this matter is proper pursuant

8   to 28 U.S.C. § 158(a)(1).

## III. STANDARDS OF REVIEW

The bankruptcy court's conclusions of law are reviewed *de novo*. *See In re Markovich*, 207 B.R. 909, 911 (9th Cir. BAP 1997).  The bankruptcy court's findings of fact are reviewed for clear error. *Beauchamp v. Hoose*, 236 B.R. 727, 729 (9th Cir. BAP 1999).  A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a definite conviction that a mistake has been made. *Id.*  Mixed questions of fact and law are reviewed *de novo*. *Id.* at 730.

## IV. DISCUSSION

The anti-modification exception bars a Chapter 11 plan from modifying "a claim secured only by a security interest in real property that is the debtor's principal residence."[5] 11 U.S.C. § 1123(b)(5).  The terms of the statute evince three distinct requirements: "first, the security interest must be in real property; second, the real property must be the only security for the debt; and third, the real property must be the debtor's principal residence." *In re Wages*, 508 B.R. 161, 165 (9th Cir. BAP 2014).

---

[4] The Residential Construction Rider provides that upon completion of construction of a residence at 169 Rose Avenue resulting in a Certificate of Occupancy, the Rider's "provisions and agreements . . . shall be terminated and will no longer have any force or effect." ER 31:660.  At that point, under the DOT and in accordance with California law, Suntrust allegedly will retain a security interest in items of personal property that have been integrated into, or have become fixtures of, 169 Rose Avenue.

[5] The wording of Chapter 11's section 1123(b)(5) is identical to the anti-modification provision in Chapter 13's section 1322(b)(2).  Decisions interpreting either provision are persuasive in interpreting the other. *See Wages*, 508 B.R. at 165 n.6.

1       The Utzmans do not dispute Suntrust retains a security interest in "real property," or that
2  169 Rose has and continues to represent their "principal residence." Rather, they insist the word
3  "only" modifies both components of the sentence such that a claim is protected where "secured
4  only by a security interest in real property that is" only "the debtor's principal residence." Under
5  that reading, they contend Suntrust's claim fails to qualify for protection on two fronts. First, it is
6  not secured by property serving *only* as the debtor's principal residence because 169 Rose includes
7  a rental unit, making it a "multi-family dwelling." Appellant's Opening Brief ("O.B.") at 13.
8  Second, the Utzmans aver the claim is not secured *only* by a security interest in real property
9  because the Utzmans owned *personal* property when their bankruptcy was filed, which allegedly
10 constitutes collateral for Suntrust's loan under the RCR. Suntrust rejects appellants' reading of the
11 text of 1123(b)(5), and insists in reality their claim is secured only by real property that serves as
12 the Utzmans' principal residence.

13      This dispute thus boils down to a disagreement over the applicability of the exception,
14 which correspondingly depends on whether the word "only" modifies both "real property" and
15 "debtors principal residence." The construction of the statute, and its impact on 169 Rose,
16 undoubtedly present thorny issues. Each component of the provision accordingly will be
17 addressed in turn.

18    **A. "secured *only* by . . . real property *that is the debtor's principal residence*"**

19      Courts examining how far the word "only" travels down the text of 1123(b)(5) have come
20 to three different conclusions. In an early case, *Brunson v. Wendover Funding, Inc.*, 201 B.R. 351
21 (Bankr. W.D.N.Y. 1996), the court found the text of the statute wanting and opted instead for a
22 functional approach. *Id.* at 352. The debtor had insisted the exception did not apply to bar
23 modification of the lender's claim because her residence had two units, she operated a day care
24 from the second unit, she earned rental income from the second unit, and the lender had a security
25 interest in the rents. *Id.* at 351–52. The court elected to look to the "character of the transaction"
26 to decide if the claim was secured only by a security interest in real property that is the debtor's
27 principal residence. As the court saw it, "[i]f the transaction was predominately viewed by the

parties as a loan transaction to provide the borrower with a residence," the court concluded "the anti-modification provision will apply." *Id.* at 354.  Conversely, if "the transaction was viewed by the parties as predominantly a commercial loan transaction," the court explained that "stripdown will [then] be available."[6] *Id.* Decisions in the wake of *Brunson* have characterized the opinion as establishing a "totality of the circumstances" test to decide whether the anti-modification provision will apply. *See, e.g.*, *Wages*, 508 B.R. at 166.

A decade later, in *Scarborough v. Chase Manhattan Mortgage Corporation*, 461 F.3d 406 (3d Cir. 2006), the Third Circuit decided the word "only" did in fact modify "debtor's principal residence."[7] *Id.* at 408.  As before, the debtor insisted the exception did not apply because the lender's claim was secured by a two-unit property that included an income-producing rental unit. *Id.* at 410.  The court held the plain meaning of the text required acceptance of this argument. Specifically, "[b]y using the word 'is' in the phrase 'real property that *is* the debtor's principal residence," the Third Circuit believed "Congress equated the terms 'real property' and 'principal residence.'" *Id.* at 411.  Because the terms were co-extensive, the Third Circuit accordingly concluded "the real property that secures the mortgage must *be only* the debtor's principal residence in order for the anti-modification provision to apply." *Id.* (emphasis in original).

The Ninth Circuit BAP reached the opposite conclusion recently in *Wages*, 508 B.R. 161 (9th Cir. BAP 2014), the case upon which the bankruptcy court relied in denying the Utzmans' modification.  In *Wages*, the debtor maintained the exception did not apply because the residence included a home office, and a portion of the property was also being used to operate a trucking business. *Id.* at 163.  The court found the plain meaning of the statute required it to reject the debtor's contention, and held "the anti-modification exception applies to any loan secured only by

---

[6] The court did not adjudicate the applicability of the exception.  Rather, it denied the cross-motions for judgment pending an evidentiary hearing consistent with the decision. *Brunson*, 201 B.R. at 354.  The "strip down" to which the court referred describes a reduction in the secured component of the debt to the present value of the collateral.

[7] The Third Circuit was interpreting the language of the identical anti-modification provision in Chapter 13 of the Code. *Scarborough*, 461 F.3d at 408.

real property that the debtor uses as a principal residence property, *even if that real property also serves additional purposes.*" *Id.* at 168 (emphasis added). The BAP followed the approach of the bankruptcy court in *In re Macaluso*, 254 B.R. 799, 800 (Bankr. W.D.N.Y. 2000), which emphasized the statutory text does not protect from modification claims secured only by an interest in property that is *exclusively* the principal residence. *Wages*, 508 B.R. at 167.

Turning to the Third Circuit's analysis in *In re Scarborough*, the BAP was unpersuaded for two reasons. First, the court disagreed with the textual argument because it "add[ed] a second 'only' into the statutory language to further limit the application of [the provision]." *Id.* at 167. The court found "[t]here simply is no second 'only'" in 1123(b)(5), "nor any way to read the one usage of that term to limit the use of the property rather than limiting the extent of the collateral." *Id.* (quoting *In re Schayes*, 483 B.R. 209, 215 (Bankr. D. Ariz. 2012)).

Second, the BAP rejected that "real property" could be equated with "debtor's principal residence," and noted *Scarborough* did not grapple with the Code's newest definition of the latter term.[8] In particular, both the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and the Bankruptcy Technical Corrections Act of 2010 amended the definition of "debtor's principal residence" in section 101(13A). *See* Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005); Pub. L. 111–327, 124 Stat. 3557 (Dec. 22, 2010). It now "means a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property."[9] 11 U.S.C. § 101(13A). Because "the definition avoids

---

[8] *Scarborough* recognized the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 changed the definition of "debtor's principal residence" to mean "a residential structure, including incidental property, without regard to whether that structure is attached to real property." *See Scarborough*, 461 F.3d at 412 n.2. It also acknowledged "incidental property" includes "property commonly conveyed with a principal residence in the area where the real property is located." *Id.* The court did not decide "whether a rental unit located in a multi-unit dwelling could fit within this definition of 'incidental property'" because the debtor commenced the bankruptcy at issue four years prior to the effective date of the amendment. *Id.* Thus, the court "le[ft] for another day" the question of whether, or how, the scope of the anti-modification provision had changed. *Id.*

[9] Section 13A(B) adds that the definition "includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer if used as the principal residence by the debtor." *See* 11 U.S.C. § 101(13A)(B).

1 defining 'real property' and also clarifies that whether a structure is a principal residence is independent of whether it might be real property," the BAP found the terms could not be considered co-extensive, and thus "an analysis which equates the two is misplaced." *Id.* at 166.

The Utzmans spurn *Wages* in favor of *Scarborough* on two primary bases. To start, they assert *Wages* is factually distinguishable from the instant case because *Wages* involved a business rather than an income-producing rental unit. This argument is unavailing because the holding of *Wages* renders the distinction inapposite.[10] *See Wages*, 508 B.R. at 168 (implying the nature of the "additional purpose" for which the debtor's principal residence is used is immaterial).

Next, the Utzmans insist 1123(b)(5) is ambiguous and turn to the legislative history, which they argue supports the interpretation of the text adopted by the Third Circuit in *Scarborough*. Specifically, a House Judiciary Committee report on the Bankruptcy Reform Act of 1994 reveals Congress intended to "conform[] the treatment of residential mortgages in chapter 11 to that in chapter 13, preventing the modification of the rights of a holder of a claim secured only by a security interest in the debtor's principal residence." H.R. Rep. No 835, 103d Cong., 2d Sess. 46 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3354. The report explains the exception "does not apply to a commercial property, or to any transaction in which the creditor acquired a lien on property other than real property used as the debtor's residence." *Id.* This proposition was supported by citation to a case called *In re Ramirez*, 62 B.R. 668 (Bankr. S.D. Cal. 1986). There, the lender held a security interest in property that consisted of the debtor's principal residence and two rental units. *Id.* at 668. The court declined to apply the anti-modification exception because the lender's security interest extended to the debtor's rental property, and thus it was not secured only by an interest in the debtor's principal residence. *Id.* at 670. Though not relied on by the courts in either *Wages* or *Scarborough*, the Utzmans take this history to suggest that Congress did not intend to bar modification of a claim secured by an interest in a multi-unit dwelling.

---

[10] In any event, the cases are factually consistent because the Utzmans use their home office to operate a structural engineering consulting business. E.R. 498.

1    Having reviewed the evidence, the court's interpretation of 1123(b)(5) in *Wages* is correct.
2    Once again, the provision bars a Chapter 11 plan from modifying "a claim secured only by a
3    security interest in real property that is the debtor's principal residence." Looking to the plain
4    language, the word "only" is an adverb used to modify the word "secured," whereas the clause
5    "that is the debtor's principal residence" modifies the term, "real property."[11] The placement of
6    "only" suggests it limits the extent of the collateral for the secured debt, and not the use of the
7    property deemed the "debtor's principal residence." True, Congress used "is," rather than "solely"
8    or "includes," to tie "real property" to "debtor's principal residence." That does not afford a basis,
9    however, for "only" to extend its reach beyond its plain limitation to "a security interest in real
10   property."[12]

11   *Scarborough*'s analysis is unconvincing because the text simply does not contain a second
12   use of the word "only." Moreover, to the extent the two terms are "equated" by the word "is," that
13   argument is still unavailing. Real property *is* a "debtor's principal residence" even if it *is*
14   something else, too, so the word "is" does not suggest the property must serve "only" one
15   function—that of the debtor's principal residence. *Scarborough*'s hyperliteral translation reads the
16   word "is" in isolation and the resulting interpretation is accordingly unpersuasive because it
17   ignores the plain meaning of the language taken in its broader context.

18   Even setting these interpretive calisthenics aside, *Scarborough* did not construe the latest
19   version of the statutory text. The 2005 bankruptcy amendments added for the first time a
20   definition of "debtor's principal residence," and also defined the term "incidental property," which

---

[11] Given that not all "real property" serves as a person's "principal residence," the clause clarifies the protection is afforded merely to residential structures that do serve as a "debtor's principal residence."

[12] Further, given 1123(b)(5) requires the property to be "real property," when substituting the relevant portion of the definition of "debtor's principal residence" into the statute, 11 U.S.C. § 101(13A), the provision reads: "secured only by a security interest in real property that is [a residential structure if used as the principal residence by the debtor]." Though not dispositive in any way, this exercise suggests Congress intended the real property to be used as the debtor's principal residence, but not *exclusively* as the debtor's principal residence.

1  appears in that definition. These changes make clear Congress did not equate the terms "real

2  property" and "debtor's principal residence."[13] *Scarborough*'s contrary finding, and its treatment

3  of the terms as co-extensive, therefore cannot be accepted.

4        The legislative history need not be reached in light of the plain meaning of the text. In any

5  event, its consideration here would not clearly resolve the relevant question. On one hand, the

6  committee report explains the exception does not apply where a "creditor acquired a lien on

7  property other than real property *used as* the debtor's residence." H.R. Rep. No 835, 103d Cong.,

8  2d Sess. 46 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3354 (emphasis added). This language

9  suggests the real property need not be employed exclusively as the debtor's principal residence.

10  On the other hand, the citation of *Ramirez* plainly suggests Congress contemplated the exception

11  would not apply where a lender's security interest extended to a debtor's multi-unit rental

12  property.[14] Setting the committee report aside, the 2005 amendments also shed light on

13  Congress's intent.[15] That statute added a broad definition of "debtor's principal residence" in a

14  title headed: "Discouraging Bankruptcy Abuse." *See* Pub. L. 109-8, Title III, 119 Stat. 23, 24

15  (2005). The term is detailed specifically in section 306 of the Act, whose caption indicates it is

16  intended to "[g]iv[e] secured creditors fair treatment in chapter 13." *See* Pub. L. 109-8, § 306, 119

17  Stat. 23, 24 (2005). This evidence suggests Congress defined "debtor's principal residence" to

---

[13] The term "debtor's principal residence" means "a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property," 11 U.S.C. § 101(13A), and includes "an individual condominium or cooperative unit, a mobile or manufactured home, or trailer if used as the principal residence by the debtor," *id.* § 101(13B). The "term 'incidental property' means, with respect to a debtor's principal residence—(A) property commonly conveyed with a principal residence in the area where the real property is located; (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and (C) all replacements or additions." *Id.* § 101(27B).

[14] Importantly, courts have not uniformly construed Ramirez to make that implication. *See Brunson*, 201 B.R. at 353 (reading Ramirez to require a totality of circumstances test).

[15] Though the 2010 amendments also altered the definition of "debtor's principal residence," and thus the anti-modification provision, the correction was "not intended to enact any substantive change to the Bankruptcy Code." 156 Cong. Rec. H8535 (daily ed. Dec. 16, 2010) (statement of Rep. McHenry).

discourage abusive bankruptcy filings, and to benefit secured creditors in their various interactions with bankruptcy petitioners. Indeed, when the definition of "debtor's principal residence" is substituted for that term in 1123(b)(5), the provision suggests Congress did not intend the real property to be used exclusively as the debtor's principal residence.[16]

Interpreting the exception to apply to a debtor's principal residence, even if it also serves additional functions, is similarly consistent with the statute's purpose. By enacting the exception, Congress sought to afford "favorable treatment" to residential lenders to "encourage the flow of capital into the home lending market." *Nobelman v. Am. Savings Bank*, 508 U.S. 324, 332 (1993) (Stevens, J., concurring); *BAC Home Loans Servicing, LP v. Abdelgadir*, 455 B.R. 896, 903 (9th Cir. BAP 2011) (noting 1123(b)(5) has the same purpose as the anti-modification exception in 1322(b)(2)). Interpreting the exception to require only that the real property be used as a debtor's principal residence affords greater protection to residential lenders, promoting the issuance of loans. This bright-line approach also fosters certainty in the home lending market. Specifically, it counteracts the fear raised by the Third Circuit in *Scarborough* that petitioners will sidestep the exemption by renting a portion of their property to another on the eve of their bankruptcy filing.

In sum, section 1123(b)(5) requires the real property be used as the debtor's principal residence; it does not require the real property be used *solely* as the debtor's principal residence, or be deemed the debtor's principal residence in light of the totality of the circumstances. Given the Utzmans do not dispute 169 Rose serves as their principal residence, the fact that they rent out a small portion of the property does not defeat the applicability of the exception. Exercising *de novo* review, the bankruptcy court's construction of the statute accordingly will be affirmed. In

---

[16] As the debtors correctly point out, Section 101(13A) makes clear a "debtor's principal residence" can be "real property" (like a house on a parcel of land) or a structure that is not attached to a parcel of real property (like a houseboat). A claim secured by a houseboat that serves as a debtor's principal residence, however, would not be afforded protection under the exception because it is not a claim secured "only by a security interest in *real property*." Thus, the exception applies to a subset of the claims secured by principal residences—namely, those that are secured only by a security interest in real property. Allowing for that limitation, the substitution of the definition of "debtor's principal residence" does imply Congress did not intend the real property to be used exclusively as the debtor's principal residence.

1  addition, its finding that 169 Rose is the debtor's principal residence is not plainly erroneous. The

2  bankruptcy court's holding on this issue altogether is affirmed.

### B. "secured *only* by a security interest in *real property*"

The next issue is whether Suntrust's claim is secured "*only* by a security interest in *real property*." The Utzmans insist the RCR establishes it is not. Specifically, the RCR defines Suntrust's collateral to consist of "Property" with a capital "P," then describes that term as containing both "Real" and "Personal" property.[17] Because the Utzmans contend they owned personal property on the date their petition was filed, they submit Suntrust's claim falls outside the exception as it is secured by collateral that does not constitute "real property."

Suntrust responds its claim "is secured only by a security interest in real property" because the parties contemplated the collateral would become part of the "real property" upon completion of construction. Specifically, the RCR provides it "will no longer have any force or effect" once a residence is built on 169 Rose resulting in a Certificate of Occupancy. At that point, Suntrust submits it will retain a security interest only in the items of personal property that have been integrated into, or have become fixtures of, 169 Rose Avenue. The Utzmans counter that some of the personal property will not be incorporated into the real property, and object in any event to the issue being decided based on the hypothetical future character of the property. The relevant date for determining the applicability of the exception, in the eyes of the Utzmans, is the date upon which their original bankruptcy petition was filed.

The bankruptcy court framed the dispute as whether the personal property transforms into

---

[17] Among other things, the RCR covers a class of property consisting of "any and all fixtures, machinery, equipment, building materials, appliances, and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with" 169 Rose Avenue, "all replacements and accessions of them," E.R. 31:658, and all items of real and personal property "for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air and light; [in addition to the] security and access control apparatus, plumbing and plumbing fixtures; refrigerating, cooking and laundry equipment; carpet, floor coverings and interior and exterior window treatments; furniture and cabinets; interior and exterior sprinkler plant and lawn maintenance equipment; fire prevention and extinguishing apparatus and equipment, water tanks, swimming pool, compressor, vacuum cleaning system, disposal, dishwasher, range, and oven."

real property by virtue of the language contained in the parties' deed of trust. Alas, there is a split of authority on how to go about answering that question.

On one side of the debate, courts employ a textualist approach both to the statute and the DOT on the theory the anti-modification exception prohibits lenders from taking a security interest in *anything* other than the debtor's principal residence. *See Lomas Mortg. v. Louis*, 82 F.3d 1, 7 (1st Cir. 1996); *Hammond v. Commonwealth Mortg. Corp. of Am.*, 27 F.3d 52, 56–57 (3rd Cir. 1990). On the other side, courts look to the purpose of the statute to conclude the exception applies if the additional collateral incorporated by the DOT is "inextricably bound to the real property itself as part of the possessory bundle of rights," *In re Davis*, 989 F.2d 208, 213 (6th Cir. 1993), or "nothing more than an enhancement which is or can, by agreement of the parties, be made a component part of the real property[,] or is of little or no independent value," *In re French*, 174 B.R. 1, 7 (Bankr. Mass. 1994).

The bankruptcy court looked to the Ninth Circuit BAP's decision in *In re Lee* for guidance. 215 B.R. 22 (9th Cir. BAP 2007). There, the debtors argued their DOT gave the lender an interest in property beyond their principal residence, and the lender shot back the language amounted to mere "boilerplate" and never was intended to create a security interest in anything other than the residence. *Id.* The BAP concluded "boilerplate" language in a DOT should not defeat the applicability of the exception. It therefore barred modification because the collateral was "nothing more than an enhancement which is or can, by agreement of the parties, be made a component part of the real property[,] or [wa]s of little or no independent value." *Lee*, 215 B.R. at 26. Adhering to that precedent, the bankruptcy court applied the anti-modification exception in the instant case because it concluded the parties intended the personal property to become real property when construction was completed.

Simply put, the text of the statute requires a lender's claim to be secured "only by a security interest in real property." Under the RCR, Suntrust's claim does not meet that unambiguous condition.

To start, "the petition date is the appropriate date for determining whether the anti-

modification provision of § 1123(b)(5) applies to a secured claim." *Wages*, 508 B.R. at 164 (citing *In re Abdelgadir*, 455 B.R. 896, 902–03 (9th Cir. BAP 2011); *In re Benafel*, 461 B.R. 581, 591 (9th Cir. BAP 2011)).  On the petition date here, the RCR was operative because 169 Rose was incomplete.  Suntrust's claim was thus secured by the personal property it bargained for in the language of the deed of trust.[18]  Given a claim that is secured by an interest in personal property loses the benefit of section 1123(b)(5), the bankruptcy court's finding that the exception does apply accordingly must be reversed.[19]

Importantly, the bankruptcy court did not engage in the aforementioned analysis because it understandably adhered to the rule in *Lee*.  That approach, however, effectively reads the word "only" out of the text of section 1123(b)(5).[20]  Under the approach in *Lee*, the exception still applies when a claim is secured by personal property, so long as that property is of little independent value, or can (but need not) become a component of the real property.  It is difficult to reconcile this interpretation of the text with the plain language Congress elected to enact, given that language bars modification of a claim secured "*only* by a security interest in *real property*." 11 U.S.C. § 1123(b)(5) (emphasis added).

Suntrust concedes as much, noting the contrary approach is "closer to the provision's literal words." Appellee's Br. at 54.  Suntrust does not acknowledge, however, that the plain language interpretation is also consistent with Congress's intent.   Though it need not be reached,

---

[18] The Utzmans insist the personal property collateral includes "leases, equipment, appliances," and "furniture."  Appellants Br. at 21.  They also maintain these items would not transform into real property once the RCR is terminated. *See id.* at 21–22; E.R. 25:539.

[19] The bankruptcy court's conclusion was based on an interpretation of the DOT, which is subject to *de novo* review. *See In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003).

[20] In *Lee*, moreover, the DOT took an interest in both real and personal property, but unlike here, stated: "it being intended and agreed that such items be conclusively deemed to be affixed to and to be part of the real property that is conveyed hereby." 215 B.R. at 25–26.  The *Lee* court ultimately advised the lender it "could avoid ambiguity in its residential deeds of trust by adding a sentence which indicates that 'nothing in this deed of trust is intended to create a security interest in property other than that real property which is the trustor's principal place of residence.'" *Id.* at 26 n.6.

1   the legislative history explains the anti-modification exception "does not apply . . . to any

2   transaction in which the creditor acquired a lien on property other than real property used as the

3   debtor's residence." H.R. Rep. No 835, 103d Cong., 2d Sess. 46 (1994), *reprinted in* 1994

4   U.S.C.C.A.N. 3340, 3354.  That proposition was bolstered by citation to a case from the Third

5   Circuit, *In re Hammond*, 27 F.3d 52 (3rd Cir. 1994), which permitted modification of a claim that

6   was secured by a principal residence and "all appliances, machinery, furniture[,] and equipment."

7   *Id.* at 53–54, 58.  Like the lender in *Hammond*, Suntrust bargained for collateral that, for the time

8   being, includes personal property.  Its claim therefore falls outside the confines of protection

9   Congress created in section 1123(b)(5).  Exercising *de novo* review, the bankruptcy court's

10  contrary interpretation of the DOT must be reversed.  In short, when a lender maintains an interest

11  in a debtor's personal property in addition to their principal residence, the anti-modification

12  exception does not apply and the bankruptcy code permits bifurcation of the claim into secured

13  and unsecured components.

## V. CONCLUSION

15  Section 1123(b)(5) requires the real property be used as the debtor's principal residence; it

16  does not require the real property be used *solely* as the debtor's principal residence, or be deemed

17  the debtor's principal residence in light of the totality of the circumstances.  Given the Utzmans do

18  not dispute 169 Rose serves as their principal residence, the fact that they rent out a small portion

19  of the property does not defeat the applicability of the exception.  Nevertheless, the statute

20  requires a lender's claim to be secured "only by a security interest in real property."  Under the

21  RCR, Suntrust's claim simply does not meet that definition.  The bankruptcy court's conclusion

22  that the anti-modification exception applies accordingly must be reversed.  The action is remanded

23  to the bankruptcy court for further proceedings.

26  **IT IS SO ORDERED**.

1 | Dated: March 1, 2016

_____
RICHARD SEEBORG
United States District Judge